UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| DONNITA ROBINSON, *et al.*, ) | |
| ) | Civil No. 3:17-cv-00097-GFVT |
| Plaintiffs, ) | |
| ) | |
| V. ) | **MEMORANDUM OPINION** |
| ) | **&** |
| SHELBY COUNTY, KENTUCKY, ) | **ORDER** |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |

**** **** **** ****

In late 2016, three female inmates, Plaintiffs Donnita Robinson, Alicia Quire, and
Mercedes Castillo, were allegedly subjected to sexual abuse by two Shelby County Detention
Center employees. After reporting the alleged abuse to authorities, Plaintiffs filed suit claiming
multiple state law violations and constitutional violations under 42 U.S.C. § 1983. In addition to
the two alleged primary actors, Defendants Jason Quijas and Patrick Votaw, Plaintiffs allege that
other Defendants were responsible for allowing the abuse to occur. These latter Defendants,
Shelby County, Kentucky, Bobby Waits, Tony Aldridge, Larry Donovan, and Richard Foltmann,
now seek summary judgment on all Plaintiffs' claims against them. [R. 109.] For the reasons set
forth below, the Defendants' motion is **GRANTED in part** and **DENIED in part**.

**I**

**A**

Plaintiffs allege that the inappropriate sexual contact that serves as the basis for this
lawsuit occurred in late 2016 in the Shelby County Detention Center ("SCDC"). [R. 9 at ¶¶ 23–
56.] All three Plaintiffs assert that Defendant Quijas sexually abused them on multiple occasions

over the course of two months. [*Id.* at ¶¶ 23–46; R. 121 at 8–10.] As alleged, Mr. Quijas'

conduct towards Plaintiffs was brazen and overt, including one particularly alarming incident in

December 2016 when he directed Ms. Castillo and Ms. Quire into the same cell and then

required them to perform sex acts on him simultaneously. [R. 121 at 9.] Mr. Quijas has

admitted to many of these allegations, ultimately pleading guilty to state sexual abuse charges.

[*Id.* at 11.] As to Defendant Votaw, only Plaintiff Robinson levels accusations against him,

alleging that he used his authority to sexually abuse her multiple times. [R. 9 at ¶¶ 47–56.] Mr.

Votaw continues to vehemently deny any wrongdoing. [*See* R. 123 at 2.]

Aside from Mr. Quijas and Mr. Votaw, the other individuals named as Defendants in this

case were employees at SCDC at the time of the alleged sexual abuse who, in some form or

fashion, were tasked with monitoring inmates and fellow employees' behavior.[1] As relevant for

purposes of the present motion, Plaintiffs allege that these individuals failed to protect Plaintiffs

and were in some way responsible for the alleged sexual abuse. [R. 121 at 2.] Specifically,

Plaintiffs allege that Defendants knew about Mr. Quijas and Mr. Votaw's sexual abuse of the

respective Plaintiffs or had sufficient suspicion to investigate the sexual abuse but took no

reasonable steps to stop it. [R. 9 at ¶¶ 29, 39, 46, 57.] Plaintiffs assert the Defendants'

awareness of the risk to Plaintiffs can be inferred both from the general setup and procedures

within SCDC and Mr. Quijas' conduct towards the female inmates, as observed by Defendants.

Against the present Defendants, Plaintiffs' Third Amended Complaint asserts various §

1983 claims and two state law claims, negligence and intentional infliction of emotional distress.

[*See* R. 9.] Defendants now move for summary judgment, arguing that there are no genuine

---

[1] In the interest of concision, unless otherwise specified, the term "Defendants" as used in this Memorandum Opinion and Order refers only to the Defendants moving for summary judgment: Shelby County, Kentucky; Bobby Waits, Tony Aldridge, Larry Donovan, and Richard Foltmann.

issues of material fact regarding any of Plaintiffs' claims against them.  [R. 109-1 at 4.]

**B**

Summary judgment is appropriate where "the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986).  "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'"  *Olinger v. Corporation of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  Stated otherwise, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252.

The moving party has the initial burden of demonstrating the basis for its motion and identifying the parts of the record that establish absence of a genuine issue of material fact.  *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002).  The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325.  Once the movant has satisfied its burden, the non-moving party must go beyond the pleadings and come forward with specific facts demonstrating the existence of a genuine issue for trial.  Fed. R. Civ. P. 56; *Hall Holding*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324). Moreover, "the nonmoving party must do more than show there is some metaphysical doubt as to the material fact.  It must present significant probative evidence in support of its opposition to the motion for summary judgment." *Hall Holding*, 285 F.3d at 424 (internal citations omitted).

When applying the summary judgment standard, the Court must review the facts and

draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001) (citing *Liberty Lobby*, 477 U.S. at 255). However, the Court is under no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). Rather, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Id*.

## II

In the Third Amended Complaint, Plaintiffs assert various violations of their constitutional rights. Such allegations are properly brought under 42 U.S.C. § 1983. Section 1983 does not create substantive rights but rather "provides a remedy for deprivations of rights secured by the Constitution and laws of the United States . . .." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citing *Graham v. Connor,* 490 U.S. 386, 394 (1989) (additional citations omitted)).

## A

Plaintiffs claim that Defendants violated both their Eighth Amendment and Fourteenth Amendment rights. [R. 9 at 11–12, 14–15.] But the alleged conduct of Defendants implicates only the protection of the Eighth Amendment, not the Fourteenth Amendment. Importantly, the allegations that serve as the basis for the Fourteenth Amendment claim do not differ from those that underlie the Eighth Amendment claims. And, the entirety of the alleged abuse occurred

within the SCDC. [*See* R. 121 at 7–11.] It is the Eighth Amendment that is "specifically concerned with the unnecessary and wanton infliction of pain in penal institutions [and] serves as the primary source of substantive protection to convicted prisoners . . .." *Whitley v. Albers*, 475 U.S. 312, 327 (1986). Because the events at question happened while Plaintiffs were prison inmates, not pretrial detainees or persons enjoying unrestricted liberty, Plaintiffs' § 1983 claim "must be for redress of eighth amendment, not fourteenth amendment substantive due process, rights." *Walker v. Norris*, 917 F.2d 1449, 1455 (6th Cir. 1990) (citation omitted).

On this issue, Plaintiffs fail to even mention the viability of their Fourteenth Amendment claims in their response to Defendants' summary judgment motion, where Defendants specifically challenged whether such a claim was proper. [R. 109-1 at 13–15.] To the extent Plaintiffs may have initially desired to bring constitutional claims for violations of their Fourteenth Amendment rights, the Court finds those claims unfounded given the present allegations. Additionally, as Plaintiffs have not shown any effort to develop the claims, they are effectively waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). The Court grants summary judgment to Defendants on Count III and the portions of Counts IV and V of the Third Amended Complaint which assert Fourteenth Amendment claims.

**B**

Plaintiffs' allegations do, however, fall squarely within the purview of Eighth Amendment protections. As explained by the Eighth Circuit, "because the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain' forbidden by the Eighth Amendment." *Freitas v. Ault,* 109 F.3d 1335, 1338 (8th Cir. 1997) (citations omitted); *see also*

*Rafferty v. Trumbull Cty., Ohio*, 915 F.3d 1087, 1096 (6th Cir. 2019). To prevail on a constitutional claim on the basis of sexual harassment, "an inmate must therefore prove, as an objective matter, that the alleged abuse or harassment caused 'pain' and, as a subjective matter, that the officer in question acted with a sufficiently culpable state of mind." *Freitas,* 109 F.3d at 1338 (citing *Hudson v. McMillian,* 503 U.S. 1, 8 (1992)).

Defendants acknowledge that the Plaintiffs allegations of sexual abuse, if true, meet the objective component necessary for an Eighth Amendment claim. At issue is the subjective state of mind of the Defendants. For an Eighth Amendment claim, a "sufficiently culpable state of mind" is "one of 'deliberate indifference' to inmate health or safety . . .." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The Supreme Court has explained further that:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

## C

The Court first considers the Eighth Amendment claims against Defendants Aldridge, Donovan and Foltmann, set forth in Counts I and II. Plaintiffs attempt to demonstrate in a variety of ways that the subjective component of the Eighth Amendment claim is met as to these claims.

## 1

First, Plaintiffs assert that these Defendants should have been aware of the risk of sexual abuse at the hands of Mr. Quijas and Mr. Votaw based on circumstantial evidence. [R. 121 at 15.] As noted above, for a prison official to be liable under the Eighth Amendment "the official must both be aware of facts from which the inference could be drawn that a substantial risk of

serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 834. In this context, establishing subjective knowledge via circumstantial evidence is sufficient in certain limited instances where the risk is "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk . . .." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (citation omitted). Here, however, Plaintiffs' attempt to establish subjective awareness of risk based on what these three Defendants *should have noticed* is unavailing.

Plaintiffs' "circumstantial evidence" argument tracks as follows: it is undisputed that Mr. Quijas acted inappropriately towards inmates on numerous occasions; Defendants were tasked with monitoring both inmates and fellow employees' behavior and, objectively, were adequately equipped to do so; therefore, Defendants must have known Mr. Quijas was acting in a predatory manner towards Plaintiffs. In support of this line of argument, Plaintiffs point out that there were safety measures in place to ensure no inappropriate contact occurred that, if adhered to, would have led to Defendants becoming aware of the sexually inappropriate behavior. [*See* R. 121 at 6, 16–17.] For example, Plaintiffs point to SCDC safety measures whereby a flashing light turned on in the control room whenever a cell door was opened and, relatedly, the constant video camera feed in the control room. [*Id.*; R. 121-8 at 42–43.] Based on these two safety measures, Plaintiffs assert that these Defendants, who worked in the control room, must have been aware of Mr. Quijas brazen behavior in particular which, in addition to the sex acts in the cells, also included passing notes[2] and other items to inmates. [R. 121 at 15–17.] To this point, these three

---

[2] Notably, while Plaintiffs' Third Amended Complaint contends that "Defendant intercepted one or more of these notes [from Quijas] and shared their contents with Defendant Waits, Defendant Alridge, or both" [R. 9 at 6], Plaintiffs fail to point to any evidence in support of this contention.

Defendants admitted that their duties in the control room included monitoring cameras for suspicious behaviors by inmates or officers. [*Id.* at 15–16; R. 121-10 at 46.]

Although somewhat convincing at first glance, Plaintiffs' attempt to establish knowledge via circumstantial evidence lacks the necessary components. As alleged by the Plaintiffs, the sexual abuse occurred intermittently over a two-month time span and was limited mainly to Mr. Quijas' conduct. [*See* R. 9 at ¶ 23.] This is not the type of longstanding, pervasive behavior that would provide an inference that Defendants subjectively knew of the risk to Plaintiffs. Further, both Mr. Quijas and certain of the Plaintiffs testified that they attempted to conceal the behavior from other employees. [R. 109-1 at 16–17 (citing R. 109-11 and R. 109-12).] This active concealment cuts directly against a finding that the "circumstances suggest[ed] that the defendant-official being sued had been exposed to information concerning the risk . . .." *Farmer*, 511 U.S. at 842; *see also Mangum v. Repp*, 674 F. App'x 531, 541 (6th Cir. 2017).

Further, Plaintiffs have presented no competing evidence which suggests that Defendants Donovan, Aldridge, or Foltmann were exposed to information concerning the risk. Plaintiffs state that all three Defendants worked in the control room at certain times [R. 121 at 15], but provide no evidence concerning the length of those control room shifts or as to whether any of the three were in the control room when any of the alleged sexual abuse or other relevant conduct occurred. More specifically, there is no evidence that any of the three were in the control room when the flashing light stayed on for an extended amount of time while either Mr. Quijas or Mr. Votaw were in a cell. Nor is there evidence that any of these Defendants were tasked with monitoring the video camera feed when it showed Mr. Quijas or Mr. Votaw enter and remain in a cell for an extended period of time. Plaintiffs' attempt to establish subjective awareness of risk based on circumstantial evidence falls short of establishing a genuine issue of material fact.

**2**

In further attempting to establish the subjective component, Plaintiffs also point to specific evidence that, in their view, shows that these Defendants were subjectively aware of the risk of sexual abuse. First, Plaintiffs allege that Plaintiff Robinson verbally reported Mr. Quijas' sexual abuse to Defendants. Second, Plaintiffs argue that Defendants knew Mr. Quijas was overly friendly to inmates which was a recognized warning sign of sexual abuse.

**a**

The Court will first address the alleged attempt by Ms. Robinson to report the abuse to Defendants. In the end, Ms. Robinson reported the abuse to Lieutenant Sharon Hardin who then reported to her superiors, which set off the investigation by state authorities into issues within SCDC. [R. 121 at 11.] As set forth in the Third Amended Complaint, Ms. Robinson also contends that, prior to that successful report, she attempted to report Mr. Quijas' sexual abuse to these three Defendants. [R. 9 at ¶¶ 30–32.] The record does not support this contention.

On the day of the alleged "failed report," the three Defendants were moving Ms. Robinson and others from their dorm to isolation cells. [R. 121-6 at 120–21; R. 109-13.] Displeased with this move, Ms. Robinson began yelling and acting belligerently. [R. 109-1 at 23–24; R. 121-6 at 121.] Both Defendant Aldridge and Defendant Donovan testified that Ms. Robinson yelled she wanted to make a Prison Rape Elimination Act ("PREA") complaint at that time. [R. 109-1 at 23–24 (internal citations omitted).] Mr. Aldridge and Mr. Donovan testified that when they asked her about the PREA complaint and indicated they would document it, Ms. Robinson indicated she was simply angry about the move and had no complaint. *Id.* As represented by Defendants, that is the extent of Ms. Robinson's apparent attempt to report the sexual abuse. *Id.* at 25.

The only relevant evidence advanced by Plaintiffs concerning the report is Ms. Robinson's deposition testimony which, on its face, is evasive and contradictory. First, Ms. Robinson stated that she was the one that told the three Defendants about the abuse. [R. 121-6 at 120.] Then, when questioned further, Ms. Robinson stated that she personally did not make any report to Defendants but instead that Kari Yount, did "all [her] talking for [her] about what was going on." [R. 121-6 at 121.] Ms. Robinson ultimately testified that Ms. Yount told Defendants "exactly what was going on with both" Mr. Quijas and Mr. Votaw. *Id.* However, Ms. Yount testified explicitly via affidavit that she "did not make any statements to any [SCDC] Deputies regarding any alleged sexual activity involving Donnita Robinson." [R. 109-13.] Defendants also deny receiving any such report from Ms. Robinson or Ms. Yount. [R. 109-1 at 23–26.]

The non-movant must present "significant probative evidence in support of its opposition to the motion for summary judgment." *Hall Holding*, 285 F.3d at 424. Standing alone, Ms. Robinson's equivocal testimony, refuted both by her own earlier testimony and Ms. Yount, does not amount to significant probative evidence and, moreover, is not the type of evidence "on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. Plaintiffs' attempt to establish subjective awareness of risk on the part of these three Defendants based on the alleged "failed report" falls short of establishing a genuine issue of material fact.

**b**

Next, the Court turns to Plaintiffs' contention that the three Defendants were aware of Mr. Quijas' propensity to commit sexual abuse based on his friendly nature to inmates. Here, Plaintiffs note that Defendants acknowledged that staff being overly friendly with inmates was a sign of potential sexual abuse and, further, that two of these Defendants were aware that Mr. Quijas was overly friendly to inmates. [R. 121 at 14–15.] Based on their knowledge of Mr.

Quijas' friendly behavior, Plaintiffs contend that "Defendants had sufficient knowledge [that] Quijas exhibited predatory behavior." *Id.* at 14. This theory, however, fails to create a genuine issue of material fact on whether Defendants were aware of the risk of sexual abuse.

During their respective depositions, two of the three Defendants acknowledged that they noticed Mr. Quijas was friendly towards inmates. When questioned on this topic, Mr. Donovan replied, "Yeah, he did seem pretty friendly. . . . He was just always friendly. Just, you know, never seemed to discipline [inmates] or - - the people in isolation, he - - just a friendly personality." [R. 121-11 at 46.] Similarly, Mr. Foltmann, when asked if he had ever seen or heard Mr. Quijas flirting with inmates, replied, "I would see Mr. Quijas nicer to people than most deputies." [R. 121-10 at 56.] When pressed, Mr. Foltmann clarified that this was both to male and female inmates and that Mr. Quijas was just nicer generally than most deputies. *Id.* at 56–57. Plaintiffs fail to point to specific evidence in support of their assertion that Mr. Aldridge similarly observed any friendly behavior.

Plaintiffs' present theory asks the Court to find that Defendants were subjectively aware of the risk of sexual abuse solely on the basis that Mr. Quijas was friendly towards inmates. The Court acknowledges that overt friendliness is one of many warning signs of sexual abuse. But Plaintiffs do not point the Court towards any case law which supports a theory that defendant-officials can be held liable for the sexual misconduct of peers where said defendants only had very limited knowledge of certain warning signs which, at face value, seemed wholly innocuous. It is quite the logical leap to conclude, simply because Defendants knew that Mr. Quijas was friendly towards inmates generally, that they knew about the risk of sexual abuse to Plaintiffs at Mr. Quijas' hands and consciously disregarded that risk.

Plaintiffs' attempt to establish subjective awareness of risk on the part of these three Defendants based on Mr. Quijas' general friendly nature falls short of establishing a genuine issue of material fact. The Court grants summary judgment to Defendants Tony Aldridge, Larry Donovan, and Richard Foltmann as to all portions of Counts I and II of Third Amended Complaint which assert Eighth Amendment claims against them individually.

## D

In Count IV of the Third Amended Complaint, Plaintiffs assert Eighth Amendment claims against Defendants Waits, Aldridge, Donovan, and Foltmann based on a "supervisory liability" theory, alleging that these Defendants "officially authorized, approved, or knowingly went along with the unconstitutional conduct of" other Defendants. [R. 9 at 14.] Plaintiffs fail entirely, however, to address Defendants' argument within the motion for summary judgment that these claims must fail "because they are predicated upon a *respondeat superior* theory of liability [which] cannot provide the basis for liability in § 1983 actions." [R. 109-1 at 15 (citing *Monell v. Dept. of Social Services*, 436 U.S. 658, 690 (1978)).]

Defendants are correct that *respondeat superior* principles are inapplicable in the context of a § 1983 action. *See Carico v. Benton, Ireland, & Stovall*, 68 F. App'x 632, 640 (6th Cir. 2003). Generally, to recover against a given defendant in a civil rights action, the plaintiff 'must allege that the defendant [was] personally involved in the alleged deprivation of federal rights." *Nwaebo v. Hawk-Sawyer*, 83 F. App'x. 85, 86 (6th Cir. 2003). As such, as with any Eighth Amendment-based § 1983 claim, courts require that Plaintiffs seeking to hold supervisors liable in this context must still prove that the supervisors were subjectively aware of the risk and consciously disregarded it. *See, e.g., Counterman v. Warren Cty. Corr. Facility*, 176 F. App'x 234, 241 (3d Cir. 2006) (citations omitted).

On the present claim, analysis as to Defendants' state of mind is no different than the above analysis concerning the claims within Counts I and II.  There, the Court found there to be insufficient evidence of a culpable state of mind on the part of the three individual Defendants.[3] *See* discussion *supra*, Section II.A.  Further, as noted, Plaintiffs have failed entirely to respond to Defendants' argument concerning Count IV.  Consequently, the Court finds that the claims based on "supervisory liability," largely indistinguishable from the claims within Counts I and II, are waived, and summary judgment is proper as to Count IV.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (indicating issues "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation" may be deemed waived).

## E

### 1

Defendant Bobby Waits was the Shelby County Jailer at the time the alleged sexual abuse occurred.  [R. 9 at 4.]  In Counts I and II, Plaintiffs seek to hold Mr. Waits individually liable for the alleged Eighth Amendment violations.  [R. 9 at 11, 12.]  However, Plaintiffs' response to Defendants' summary judgment motion does not attempt to introduce any evidence as to Mr. Waits' subjective awareness or knowledge of conduct that indicated he was aware of, and consciously disregarded, the risk of sexual abuse to Plaintiffs.  [*See* R. 121 at 1–18.]  In light of Plaintiffs' failure to further develop these claims, the Court is not aware of any evidentiary basis for the claims against Mr. Waits individually.  Defendant Waits is entitled to summary judgment on Counts I and II.

---

[3] The Court notes that Defendant Waits' state of mind as to the Eighth Amendment claims will be analyzed below in Section II.E.

The Court now turns to an alternative theory of constitutional liability against Mr. Waits and Defendant Shelby County, set forth in Count V of the Third Amended Complaint. [R. 9 at 15; R. 121 at 19.]  In Mr. Waits' role as jailer, he oversaw the day-to-day operations of SCDC and, as acknowledged within Defendants' reply brief, served as a final policymaker as it related to customs within SCDC.  [R. 127 at 12; R. 121-19 at 19.]  Based on this final policymaker status, Plaintiffs allege that he was responsible for two Shelby County customs which directly caused the alleged sexual abuse.  As provided in Plaintiffs' response brief, these customs are as follows: "1) Jailer Waits failed to enforce established County policy prohibiting male deputies from entering women-only segregation units alone; and 2) Jailer Waits failed to ensure staff was properly trained to identify the signs of potential staff-on-inmate sexual abuse."  [R. 121 at 19.]

To establish county liability based on custom, a plaintiff must first demonstrate the deprivation of a constitutional right and, if able to meet that threshold, then demonstrate that the county was responsible for the violation.  *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006).  For present purposes, given the serious allegations of sexual abuse, many of which have been admitted to by Defendant Quijas, the Court will assume that Plaintiffs could demonstrate deprivation of a constitutional right.  That established, the present analysis will focus on whether the county was responsible for the assumed violation.  The key determination here is whether Plaintiffs present sufficient evidence in support of their contention that Mr. Waits' inaction established customs, as that term is defined in the case law.  If so, then Defendant Shelby County could be held liable.  *See Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("Official [county] policy includes the decisions of a government's lawmakers, the acts of

its policymaking officials, and practices so persistent and widespread as to practically have the force of law."). The Court will address each alleged custom in turn.

<strong>a</strong>

The Court first considers the failure to train claim. Plaintiffs assert there is a "disputed issue of fact regarding whether the County should be held liable for Waits' constitutionally-deficient training of Jail staff to detect and prevent potential staff-on-inmate sexual abuse." [R. 121 at 21.] Plaintiffs acknowledge there was state and county policy which focused on preventing sexual abuse but contend that Mr. Waits' failure to enforce the policy was so well established that it was effectively SCDC custom. *Id.*

Generally, plaintiffs may prove an unlawful custom by pointing to a policy of inadequate training or supervision. *See City of Canton v. Harris,* 489 U.S. 378, 387 (1989). To succeed, a plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury. *Ellis*, 455 F.3d at 700 (citation omitted). Here, it is clear that Plaintiffs fail to meet either the first or second prong.

First, the training was not inadequate for the tasks performed. SCDC employees took part in annual training based on materials provided by the Department of Corrections. [R. 121-17 at 25.] In fact, Mr. Waits testified in his deposition that SCDC staff received around "40 to 50 hours a year of training . . . at a minimum." [R. 121-19 at 32.] As part of this annual training, staff learned how to prevent staff-on-inmate sexual abuse by looking for signs that risk of abuse existed. [R. 121-17 at 51.] This established, for the most part, Plaintiffs take issue not with the level of training itself, but with the retention level of the various Defendants as it relates to this sexual abuse training. [*See* R. 121 at 22.]

The testimony of the various Defendants, current and former SCDC employees, concerning the training and retention of the training cuts against a finding of "inadequate training" in this context. Importantly, Defendants Quijas and Votaw both demonstrated a basic understanding that sexual contact was prohibited under SCDC policy. [*See, e.g.*, R. 109-12 at 18–20.] As to three of the other Defendants, Waits, Aldridge, Donovan, each also displayed a basic understanding of the sexual abuse training, even if their immediate recall when questioned in the deposition was somewhat lacking. [R. 121-19 at 16; R. 121-17 at 51–52; R. 121-11 at 42–43.] While Defendant Foltmann recalled receiving sexual abuse training, he was unable to recall specific signs as to detecting such abuse. [R. 121-10 at 52.] Even though certain Defendants may have failed to fully retain the training, the evidence shows that the training itself was not inadequate and, in fact, was in line with the Department of Corrections requirements. Poor retention on the part of certain employees in a deposition setting does not necessarily connote inadequate training on the whole. In light of the relevant evidence, including the uncontradicted testimony as to the annual training that took place within SCDC, Plaintiffs have failed to meet the first prong necessary to prove inadequate training in the § 1983 context.

Second, given the regular training, Plaintiffs fail to prove that any alleged inadequacy was the result of deliberate indifference on the part of Mr. Waits, the SCDC policymaker. To prove deliberate indifference in the failure to train context, a plaintiff must show that the failure to train reflects a "deliberate" or "conscious" choice on the part of the county. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989). As set out above, SCDC took reasonable steps to train its employees annually. Moreover, the training specifically addressed the warning signs of sexual abuse. [R. 121-17 at 51.] To the extent that certain SCDC employees failed to retain the training fully, such evidence falls well short of the type of deliberate indifference on the part of

the policymaker required to establish custom in the context of a § 1983 "failure to train" claim.

*Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 819 (6th Cir. 2007)

(citations omitted) ("[T]he municipality must have exhibited deliberate indifference to 'known or

obvious consequences,' and mere 'simple or even heightened negligence will not suffice' to

render it liable.").  Plaintiffs have failed to meet either the first or second prong of a failure to

train claim as necessary to prove that the SCDC had a custom of not training its employees.

**b**

The Court next turns to Plaintiffs' assertion that "Jailer Waits' refusal to enforce County

policy that male deputies not enter women-only segregation units without women deputies

present was a Jail custom that caused the deprivation of Plaintiffs' constitutional right[s] . . .."

[R. 121 at 19.]  As with many of the Plaintiffs' claims, this theory of liability falls short due to

Plaintiffs' failure to introduce sufficient evidence concerning the mental state of the Defendant at

question—here, Mr. Waits.

Although not expressly stated, it appears that Plaintiffs' present claim is made "on the

basis of an 'inaction theory,' where a policy of tolerating federal rights violations is unwritten

but nevertheless entrenched."  *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir.

2005).  Under such a theory, Plaintiffs must show:

> (1) the existence of a clear and persistent pattern of [illegal activity];
> (2) notice or constructive notice on the part of the [defendant];
> (3) the [defendant's] tacit approval of the unconstitutional conduct, such that their
> deliberate indifference in their failure to act can be said to amount to an official
> policy of inaction; and
> (4) that the [defendant's] custom was the "moving force" or direct causal link in
> the constitutional deprivation.

*Id.* (alteration in original) (quoting *Claiborne Cty.,* 103 F.3d at 507).

The Plaintiffs arguably introduce sufficient evidence as to the first element—existence of a clear and persistent pattern of illegal activity. All three Plaintiffs assert that Mr. Quijas sexually abused them on multiple occasions over the course of two months and Ms. Robinson alleges that Mr. Votaw also briefly engaged in such conduct towards her. [*Id.* at ¶¶ 23–46; R. 121 at 8–10.] The Court will assume for the sake of the argument that these instances rose to the level of a "clear and persistent pattern of illegal activity" and find that Plaintiffs have met the first element.

Where Plaintiffs' argument on this theory fails is their inability to meet the closely related second and third elements of the test—notice or constructive notice to Waits, and his tacit approval. In their response, Plaintiffs claim that "Jailer Waits consciously chose to let his staff violate [the SCDC] rule in favor of a custom of letting male deputies enter [female housing] without accompanying women deputies." [R. 121 at 20.] Plaintiffs fail to provide any evidence, however, concerning Mr. Waits' awareness of this alleged custom or the sexual abuse itself. In fact, as to the failure to enforce the SCDC policy at issue, it does not appear that Mr. Waits was even questioned on this practice at any point during his deposition. [*See* R. 127 at 12.]

To the extent Plaintiffs ask the Court to infer that Mr. Waits had constructive notice of this practice or the sexual abuse the record does not support such an inference. In his deposition, Mr. Waits described his role as jailer as largely administrative, with only limited day-to-day observation of inmates and staff interaction with inmates. [R. 121-19 at 19–23.] Mr. Waits specifically stated that while he would walk the cell hallways "unannounced" at times, this was not a daily occurrence. *Id.* at 20. On the record, his interactions with the inmates were largely limited to booking and handling grievances. *Id.* at 20–21. In sum, the Plaintiffs fail to develop how Mr. Waits might have been on constructive notice of either the practice or the alleged abuse.

Without any evidence of notice to Mr. Waits, there is also no basis to find that Mr. Waits "tacitly approved" the unconstitutional conduct, as required by the third prong of the test. Plaintiffs have failed to meet either the second or third prong of the "inaction" claim test as necessary to prove that the SCDC had a custom of not enforcing the SCDC policy at issue. Defendants Waits and Shelby County, Kentucky are entitled to summary judgment on Count V of the Third Amended Complaint.

### III

Finally, the Court will address the state law claims against the various Defendants. In Counts VI and VII, Plaintiffs bring claims against "all Defendants" for negligence and intentional infliction of emotional distress. As above, the Court will consider whether summary judgment is proper on these claims as to each of the moving Defendants.

### A

Plaintiffs do not contest that Defendant Shelby County, Kentucky is entitled to sovereign immunity as to the state law claims included in Counts VI and VII of the First Amended Complaint. [*See* R. 121 at 26.] Accordingly, the Court will grant summary judgment to Defendant Shelby County on these claims, as set forth in Counts VI and VII. As Defendant Shelby County has now been granted summary judgment as to all claims against it, it is unnecessary to further consider parties' arguments concerning whether it may be subject to punitive damages. [*See, e.g.*, R. 121 at 29.]

### B

Lastly, the Court turns to the motion for summary judgment as it relates to the state law claim against the individual Defendants, Defendant Shelby County aside. On these claims, the individual Defendants fail to meet the initial burden they must carry in order to obtain summary

judgment. As noted in Plaintiffs' response [R. 121 at 26], Defendants' motion for summary judgment only discusses why the state law claims against Defendant Shelby County should be dismissed pursuant to the doctrine of sovereign immunity. [R. 109-1 at 40–43.] Defendants' motion and subsequent reply do not specify, with any substance, why the remaining Defendants are entitled to summary judgment on these claims.

In all, the remaining Defendants' argument on these claims amounts to two cursory paragraphs in their reply brief that simply cite to argument related to the § 1983 claims. [*See* R. 127 at 16–17.] Indeed, Defendants fail entirely to cite to the applicable qualified immunity standards concerning the state law claims. It appears Defendants believe the propriety of dismissal is so evident on these claims that they need not expressly provide the basis for dismissal. "But it is not for the Court to search the record and construct arguments. Parties must do that for themselves." *Brenay v. Schartow*, 709 F. App'x 331, 337 (6th Cir. 2017) (citing *Magnum Towing & Recovery v. City of Toledo*, 287 F. App'x. 442, 449 (6th Cir. 2008)).

In light of the above-described deficiencies, Defendants have not met their initial burden as moving parties of demonstrating the basis for their motion and identifying those parts of the record that establish the absence of a genuine issue of material fact on these claims. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). Accordingly, except as it concerns Defendant Shelby County, Defendants' motion on the state law claims in Counts VI and VII must be denied. However, the Court will deny Defendants' motion without prejudice and with leave to refile to address the issue of qualified immunity. Should Defendants re-file to address this issue, they must file a motion within **seven (7) days** of the entry of this Order. Likewise, Plaintiffs are then entitled to respond to any such filing within **seven (7) days** of Defendants' filing, if any should occur.

**IV**

Simply because unconstitutional conduct has allegedly occurred does not mean that all officials who had an opportunity to stop it can be held constitutionally liable. Plaintiffs fail to present sufficient evidence to create any genuine issues of material fact on the § 1983 claims, as necessary to overcome Defendants' motion for summary judgment. Conversely, on the state law claims, aside from Defendant Shelby County, Defendants' motion fails to sufficiently demonstrate that the remaining Defendants are entitled to summary judgment. As a result, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1.  Defendant's Motion for Summary Judgment [**R. 109**] is **GRANTED in part** and **DENIED in part**;

2.  All Plaintiffs' claims against Defendant Shelby County, as set forth in Counts I, II, III, V, VI, and VII of the Third Amended Complaint, are **DISMISSED**;

3.  Plaintiffs' § 1983 claims against Defendants Aldridge, Donovan, and Fultz, as set forth in Counts I through IV of the Third Amended Complaint, are **DISMISSED**;

4.  Plaintiffs' § 1983 claims against Defendant Waits, as set forth in Counts I through V of the Third Amended Complaint, are **DISMISSED**;

5.  Plaintiffs' state law claims against all Defendants except for Shelby County, Kentucky, as set forth in Counts VI and VII of the Third Amended Complaint, remain;

6.  Defendants may refile to address the identified issues concerning the state law claims, consistent with the directives of this Order;

7.  This Order does not affect Plaintiffs' claims against Defendants Quijas and Votaw, who did not join in the immediate motion. All claims against those two Defendants remain; and

8.  In light of this Court's previous October 11, 2019 Order [R. 139], granting the parties' Joint Motion to Continue Trial, the parties' respective motions requesting continuances at Docket Entries #133, #134, and #135 are **DENIED as moot.**

This the 11th day of March, 2020.

Gregory F. Van Tatenhove
United States District Judge