UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| DONNITA ROBINSON, | ) | |
| | ) | Civil No. 3:17-cv-00097-GFVT-EBA |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| SHELBY COUNTY, KENTUCKY, *et al.*, | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on three separate defense motions to exclude the testimony of Plaintiffs' expert witness, Mr. Cameron Lindsay. [R. 118; R. 119; R. 120.] In their respective motions, Defendants claim that Mr. Lindsay's opinion does not meet the admissibility standards of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). For the reasons that follow, the Defendants' motions are **DENIED**.

**I**

Admissibility of expert testimony is governed specifically by Federal Rule of Evidence 702, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. From Rule 702 comes a three-part test for admitting expert testimony. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528–29 (6th Cir. 2008). First, the proposed expert

must have the requisite qualifications, whether it be through "knowledge, skill, experience, training, or education." *Id.* at 529 (quoting Fed. R. Evid. 702). Second, the testimony must be relevant, meaning that it "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* (quoting Fed. R. Evid. 702). Third, the testimony must be reliable. *Id.*; *see also Daubert*, 509 U.S. at 590.

The first prong of the test requires courts to ensure as a threshold matter that the proposed expert is qualified to render his or her opinion. Here, courts are to consider not "the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994). This requirement has always been treated liberally but, even so, this "does not mean that a witness is an expert simply because he claims to be." *Pride v. BIC Corp.,* 218 F.3d 566, 577 (6th Cir. 2000) (internal quotations and citations omitted).

As for the second prong of the test, district courts "must ensure that the proposed expert testimony is relevant to the task at hand and will serve to aid the trier of fact." *United States v. Smithers*, 212 F.3d 306, 313 (6th Cir. 2000). The Supreme Court in *Daubert* referred to this prong as the "fit" requirement. *See id.*; *Daubert*, 509 U.S. at 591–93. Because "scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes," courts must consider whether a particular expert's testimony will truly assist the trier of fact to understand the evidence in the case at hand. *Daubert*, 509 U.S. at 591.

Finally, the Court must determine whether the testimony is reliable. Rule 702 provides a number of standards by which a district court in its gatekeeper role is to gauge reliability of expert testimony. A court should look to whether the testimony is based upon "sufficient facts or data;" whether it is the "product of reliable principles and methods;" and whether the expert "has

applied these principles or methods reliably to the facts of the case." *In re Scrap Metal.*, 527 F.3d at 529 (quoting Fed. R. Evid. 702). Additionally, in determining reliability, a district court is to consider "such factors as testing, peer review, publication, error rates, the existence and maintenance of standards controlling the technique's operation, and general acceptance in the relevant scientific [or technical] community." *United States v. Langan*, 263 F.3d 613, 621 (6th Cir. 2001) (citing *Daubert*, 509 U.S. at 593–94). The reliability inquiry is a flexible one, and the above factors are not a "definitive checklist or test." *Daubert*, 509 U.S. at 593.

District courts are given broad discretion in determining whether a particular expert's testimony is reliable. *See, e.g.*, *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 672 (6th Cir. 2010); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) ("[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."). Notably, in exercising this discretion, a court must be careful not "to impinge on the role of the jury or opposing counsel." *Burgett v. Troy-Bilt LLC,* 579 F. App'x 372, 377 (6th Cir. 2014). Instead, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

## II

Defendant Votaw, Defendant Quijas, and the Shelby County Defendants[1] each move separately to exclude Mr. Lindsay's expert testimony in this case. [R. 118; R. 119; R. 120.] Although the separate motions vary slightly, all three sets of Defendants challenge whether Mr.

---

[1] "Shelby County Defendants" means those Defendants who are *not* alleged to have committed the sexual abuse itself but who Plaintiffs seek to hold liable otherwise: Shelby County, Kentucky; Bobby Waits, Tony Aldridge, Larry Donovan, and Richard Foltmann.

Lindsay is qualified to offer testimony, the first prong of the Rule 702 test. As such, the Court will first examine Mr. Lindsay's qualifications. The Court will then consider the second and third prongs of the Rule 702 test—the relevancy and reliability of Mr. Lindsay's testimony.

A

The first consideration in determining whether Mr. Lindsay is qualified is determining what Plaintiffs intend Mr. Lindsay to testify about. Plaintiffs state that Mr. Lindsay was retained to "offer opinions regarding Defendants' conduct relevant to Quijas' and Votaw's sexual abuse." [R. 126.] Review of both Plaintiffs' response to the motions to exclude and Mr. Lindsay's expert report indicate that, more specifically, Mr. Lindsay was retained to testify concerning the failure to detect and prevent the alleged sexual abuse, as mainly relevant to the theories of liability against the Shelby County Defendants. [*See* R. 126 at 4 ("There is no legitimate question whether the jury would be well served by his insights on how people who work in, supervise, and operate correctional facilities can detect and prevent staff-on-inmate sexual abuse.").] Indeed, nearly the entirety of Mr. Lindsay's expert report opines on the allegedly deficient culture and "overall lack of organizational control, knowledge, training, and leadership" within SCDC. [R. 56-1 at 22.]

The question thus becomes whether Mr. Lindsay is qualified to testify about these specific topics. The answer is yes. Mr. Lindsay's expert report and CV represent that prior to retirement in 2014 he worked in corrections for 25 years, with two appointments as acting warden of a correctional facility and three separate appointments as a warden. [R. 56-1 at 1; R. 56-2 at 3–4.] Notwithstanding this experience, Defendants specifically attack Mr. Lindsay's credentials to testify regarding "staff/inmate sexual conduct." [*See* R. 120 at 2.] To this point, Defendant Quijas argues further that "Lindsay has authored no work or publications concerning

sexual conduct occurring in the correctional context" and "has never offered any testimony at trial concerning any such conduct." [2] [R. 127 at 1.]

The Defendants' line of argument is unavailing. Simply because Mr. Lindsay does not claim certifications or publications in this specific area does not mean that, as an experienced correctional officer and former warden, he cannot speak to the normal procedures and safeguards in place to prevent such conduct. Moreover, there is no requirement that an expert have testified at a previous trial on the same topic in order to be qualified. The Court is confident that, based on his experience, Mr. Lindsay can offer well-informed insight on how employees typically work and supervise inmates and fellow officers within penal institutions. Naturally, this insight would encompass the typical measures in place to detect and prevent sexual abuse—presumably an important consideration in any correctional facility. Mr. Lindsay is qualified to offer testimony in this case.

**B**

The Court will now consider the second prong—whether Mr. Lindsay's testimony is "relevant to the task at hand and will serve to aid the trier of fact." *Smithers*, 212 F.3d at 313. Here, the analysis must be Defendant-specific to some degree. In this case, the theories of liability against the various Defendants vary significantly. On the one hand, Plaintiffs seek to hold Defendants Quijas and Votaw liable for sexual abuse that those two allegedly perpetrated. [*See, e.g.*, R. 9 at ¶¶ 62–63.] On the other, Plaintiffs seek to hold the Shelby County Defendants liable not for sexually abusing the Plaintiffs but for allowing the alleged abuse to occur. *Id.* at ¶¶

---

[2] While briefly challenging Mr. Lindsay's qualifications, the Shelby County Defendants and Defendant Votaw's motions to exclude mainly attack the relevancy and reliability of his testimony. [*See* R. 118 at 3–6; R. 119 at 2–6.]

62–63. It may very well be that Mr. Lindsay's testimony is helpful to the trier of fact in determining liability as to one set of Defendants, but not the other. *See Daubert*, 509 U.S. at 591.

**1**

The Court will first consider whether Mr. Lindsay's testimony is relevant as to the Shelby County Defendants. At this point, the Court notes that, pursuant to the Memorandum Opinion and Order entered contemporaneous to this Order, all § 1983 claims against the Shelby County Defendants are dismissed. Aside from the claims against Defendants Quijas and Votaw, the only claims that remain against the individual Shelby County Defendants are the state law claims. More specifically then, the Court must assess whether Mr. Lindsay's testimony is relevant to the state law claims against these individual Defendants.

In challenging the relevancy of his opinion, the Shelby County Defendants argue that "Mr. Lindsay is being presented to offer opinions using an inapplicable standard . . . ." [R. 119 at 8.] This argument is based on Mr. Lindsay's admission that he did not consider Kentucky Department of Corrections standards in assessing Defendants' conduct but, instead, mainly considered American Correctional Association standards. *See id.* at 7–8. However, none of the defense motions provide an explanation as to why an opinion formed when viewing Defendants' conduct through the lens of ACA standards is irrelevant to determining whether Defendants acted within the standard of care. Nor is there any authority cited to support a proposition that compliance with Kentucky Department of Corrections standards conclusively establishes compliance with the standard of care for correctional officers in Kentucky jails. On this point, Plaintiffs represent that "[n]othing in the [Kentucky Jail] Standards purports to establish the ultimate level of care with which Kentucky jails must comply." [R. 126 at 6.]

In sum, the Shelby County Defendants' motion fails to provide the Court with an

explanation of why Mr. Lindsay's reliance on ACA standards renders his testimony irrelevant. Mr. Lindsay's testimony is relevant as to Plaintiffs' state law claims against the Shelby County Defendants.

**2**

Next, the Court will briefly consider whether Mr. Lindsay's testimony is relevant as to Defendant Votaw. Mr. Votaw's motion to exclude notes that Mr. Lindsay's report included only "one specific opinion relating to Robinson's allegations against Votaw." [R. 118 at 4.] The identified opinion being that Plaintiff Robinson "credibly alleges that Patrick Votaw . . . sexually abused her in late 2016." [*Id.* (citing R. 56-1 at 2).] Mr. Votaw argues that this specific opinion should be excluded as it is the jury's responsibility to determine the credibility of witnesses. *Id.* at 3. In response, Plaintiffs agree that credibility determinations are within the province of the jury and represent that "Plaintiffs will not elicit from Lindsay at trial any opinion regarding whether Plaintiffs' allegations are credible." [R. 126 at 12.] Given the limited scope of Defendant Votaw's motion to exclude, and the subsequent concession from Plaintiffs', it is unnecessary to further consider Mr. Lindsay's testimony as it relates to Mr. Votaw. The lone issue is no longer contested and, as a result, Mr. Votaw's motion is **DENIED AS MOOT**.

**3**

The Court will next consider whether Mr. Lindsay's testimony is relevant as it concerns Mr. Quijas' potential liability. On this issue, Mr. Quijas appears to argue solely that, although relevant, Mr. Lindsay's testimony is unduly prejudicial and amounts to "cumulative testimony." [*See* R. 120 at 4 ("Setting aside the *Daubert* test of Rule 702 . . ..").] In large part, Mr. Quijas is concerned that, in explaining his opinion as to the Shelby County Defendants' liability, Mr. Lindsay will necessarily describe and discuss Mr. Quijas' misconduct, to which Mr. Quijas' has

7

already admitted. *Id.* As noted by Plaintiffs', Mr. Quijas provides no authority in support of his argument to exclude based on overall "cumulativeness." [*See* R. 126 at 11.] In his reply brief, Mr. Quijas acknowledges that the "authority is [Rule] 403 itself." [R. 130 at 2.]

Logically, to provide a foundation for his opinion, Mr. Lindsay must discuss the facts of the case. To prohibit such an explanation would be to undercut the credibility of Mr. Lindsay's testimony from the start. Moreover, any prejudice to Mr. Quijas is unclear. As noted by Mr. Quijas, he has already admitted to the conduct. *Id.* To the extent Mr. Quijas might disagree with Mr. Lindsay's characterization of the facts at trial, he is entitled to cross-examination to address such a concern. Mr. Quijas' cumulativeness argument is unavailing and does not change the Court's determination that Mr. Lindsay's testimony is generally relevant.

In sum, Mr. Quijas has not provided the Court any convincing legal basis for exclusion of Mr. Lindsay's testimony either as it relates to the claims against Mr. Quijas or the other Defendants. Mr. Quijas' arguments within his motion to exclude are limited to attacking Mr. Lindsay's qualifications and the preceding cumulativeness argument. The Court has now rejected both arguments and, as such, Mr. Quijas' motion to exclude must be **DENIED**.

## C

Lastly, the Court will now consider the third prong of Rule 702—whether Mr. Lindsay's testimony is reliable. As the Shelby County Defendants' motion is the only to attack reliability, the present analysis will be limited to the arguments within that motion. Their reliability challenge amounts to an argument that Mr. Lindsay's opinion is not "based upon 'sufficient facts or data.'" *In re Scrap Metal.*, 527 F.3d at 529 (quoting Fed. R. Evid. 702). Defendants argue that Mr. Lindsay's deposition testimony shows "he lacked an abundance of critical information prior to offering an opinion in this case." [R. 119 at 5.] More specifically, Defendants point out that

Mr. Lindsay did not review, among other things, the deposition transcripts of Plaintiff Mercedes Castillo or Defendant Patrick Votaw or the SCDC training materials. *Id.* at 1–2.

The Court acknowledges that some seemingly important items are missing from Mr. Lindsay's list. But a brief review of Mr. Lindsay's report shows that he did review a significant amount of relevant materials to provide a basis for his opinion in this case, in addition to conducting a site visit of SCDC. [*See* R. 56-1 at 6–10.] After review of Mr. Lindsay's report, and the materials relied upon, the Court finds that exclusion of his testimony on the "reliability" ground is unwarranted.

The Shelby County Defendants' objections go more to the credibility and weight of the testimony rather than its admissibility. While Defendants may have a point that these materials would have been helpful to Mr. Lindsay in developing an informed opinion, the failure to review the materials is not a basis for wholesale exclusion. Instead, the proper means of attacking this testimony is by means of "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof . . .." *Daubert*, 509 U.S. at 596. Dr. Lindsay's testimony is sufficiently reliable and will not be excluded. The Court has now rejected all arguments put forth by the Shelby County Defendants in support of their motion to exclude and, as such, their motion must also be **DENIED**.

## III

At the present hour the Court sees no basis for the wholesale exclusion of Dr. Lindsay's anticipated testimony. Should this case go to trial, Plaintiffs will be allowed to call him as an expert. Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendant Patrick Votaw's Motion to Exclude the expert testimony of Mr. Cameron

Lindsay [R. 118] is **DENIED AS MOOT**;

2. The Shelby County Defendants' Motion to Exclude the expert testimony of Mr. Cameron Lindsay [R. 119] is **DENIED**; and

3. Defendant Jason Quijas' Motion to Exclude the expert testimony of Mr. Cameron Lindsay [R. 120] is **DENIED**.

This the 11th day of March, 2020.

Gregory F. Van Tatenhove
United States District Judge