UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| DONNITA ROBINSON, *et al.*, ) <br> ) <br>    Plaintiffs, ) <br> ) <br> V. ) <br> ) <br> SHELBY COUNTY, KENTUCKY, *et al.*, ) <br> ) <br>    Defendants. ) <br> ) | Civil No. 3:17-cv-00097-GFVT <br><br> **MEMORANDUM OPINION** <br> **&** <br> **ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the individual Shelby County Defendants' Supplemental Motion for Summary Judgment. [R. 145.] This Court previously granted the Shelby County Defendants' motion for summary judgment on Plaintiffs' federal law claims but denied without prejudice Defendants' motion on Plaintiffs' state law claims against the individual Shelby County Defendants. [*See* R. 140 at 19–21.] At that time, the Court provided the individual Defendants an opportunity to re-file to more directly address whether summary judgment was proper on the state law claims. *Id.* at 20. Defendants have now done so and, for the reasons that follow, Defendants' Supplemental Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**.

**I**

This case stems from alleged sexual abuse perpetrated on three female inmates by two Shelby County Detention Center (SCDC) employees. [*See* R. 140 at 1–2.] The three female inmates, Plaintiffs Donnita Robinson, Alicia Quire, and Mercedes Castillo, filed suit in late 2017. [*See* R. 1; R. 9.] In addition to claims brought against the two primary actors, Plaintiffs allege

that the individual Shelby County Defendants—fellow SCDC employees Bobby Waits, Tony Aldridge, Larry Donovan, and Richard Foltmann—were responsible for allowing the alleged sexual abuse to occur. [R. 140 at 2; R. 9 at ¶¶ 29, 39, 46, 57.] As relevant here, in addition to their § 1983 claims, Plaintiffs also brought two state law claims against "all Defendants" for negligence (Count VI) and intentional infliction of emotional distress (Count VII). [*See* R. 9 at 16–17.]

The individual Shelby County Defendants now argue that they are entitled to summary judgment on those state law claims. [*See* R. 145.] Specifically, they argue summary judgment is proper both because they "are entitled to qualified immunity and because Plaintiffs' claims fail on the merits." [R. 145-2 at 4.] In response, Plaintiffs refute that summary judgment is proper only as it concerns the negligence claims against Defendants Waits and Aldridge.[1] [R. 148 at 2.] Thus, as an initial matter, the Court **GRANTS** Defendants' motion as to the intentional infliction of emotional distress claims (Count VII) against each of the individual Shelby County Defendants and the negligence claims (Count VI) against Defendants Donovan and Foltmann. The remainder of this Order solely addresses the negligence claims against Defendants Waits and Aldridge.

II

A

Summary judgment is appropriate where "the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986). "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a

---

[1] Plaintiffs explicitly agree to "abandon" all claims for intentional infliction of emotional distress and the negligence claims against Defendants Donovan and Foltmann. [R. 148 at 2 n 3.]

verdict for the nonmoving party.'" *Olinger v. Corporation of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Stated otherwise, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

The moving party has the initial burden of demonstrating the basis for its motion and identifying the parts of the record that establish absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325. Once the movant has satisfied its burden, the non-moving party must go beyond the pleadings and come forward with specific facts demonstrating the existence of a genuine issue for trial. Fed. R. Civ. P. 56; *Hall Holding*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324). Moreover, "the nonmoving party must do more than show there is some metaphysical doubt as to the material fact. It must present significant probative evidence in support of its opposition to the motion for summary judgment." *Hall Holding*, 285 F.3d at 424 (internal citations omitted).

When applying the summary judgment standard, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001) (citing *Liberty Lobby*, 477 U.S. at 255). However, the Court is under no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). Rather, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Id*.

**B**

Plaintiffs sue Defendants Waits and Aldridge in their individual capacities for negligence, a state law claim. [R. 9 at ¶¶ 9–10.] Specifically, Plaintiffs allege Waits and Aldridge were negligent for "fail[ing] to enforce a settled jail policy that prohibited male deputies from entering jail areas where women were housed unless requested and accompanied by women deputies." [R. 148 at 2; R. 121-19.] As set out above, Defendants argue these negligence claims fail for two separate reasons: (1) Waits and Aldridge are entitled to qualified immunity, and (2) that these claims fail on their merits. The Court will address each argument in turn, in view of applicable Kentucky law. *See Crawford v. Lexington–Fayette Urban Cty. Gov't,* 2007 WL 101862, at *3 (E.D. Ky. Jan. 10, 2007).

**1**

Under Kentucky law, qualified immunity operates to protect public officers sued in their individual capacities from "damages liability for good faith judgment calls made in a legally uncertain environment." *Yanero v. Davis,* 65 S.W.3d 510, 522 (Ky. 2001). Qualified immunity is to apply to claims against officers in their individual capacity if they were (1) performing a discretionary function, (2) in good faith, and (3) within the scope of their authority. *Id.* Such immunity is not available for the "negligent performance of a ministerial act, i.e., one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Id.*

At the time the alleged sexual abuse occurred, Defendant Waits was the Shelby County Jailer, while Defendant Aldridge was captain at SCDC. [R. 9 at 4; R. 121-17 at 21.] Both roles required some level of oversight of both SCDC employees and inmates. [R. 9 at 4; R. 121-17 at

4

23, 29; R. 121-19 at 19–23.] Plaintiffs allege that as part of the two Defendants' supervisory roles they had a duty to enforce Jail Policy 6-100 which states: "At no time will male staff enter the female housing . . . unless requested by female staff and accompanied by female staff." [R. 121-9; R. 148 at 3.] And, on the record, the Court has no reason to find otherwise—based on the language of Jail Policy 6-100, it plainly sets out rules to be followed in SCDC. [R. 121-9.] This established, the threshold question for purposes of the qualified immunity inquiry is whether enforcing this jail policy was a discretionary or ministerial act.[2] On review, the enforcement of this settled rule was ministerial in nature and, therefore, qualified immunity is unavailable.

In the qualified immunity context, the Kentucky Supreme Court has made clear that while promulgation of rules or policies is a discretionary function, the enforcement of known rules is a ministerial function. *Yanero v. Davis*, 65 S.W.3d at 529. Once the content of the rule is decided, its enforcement ordinarily does not require "the exercise of discretion and judgment, or personal deliberation, decision or judgment." *Id.* at 522 (citation omitted). As such, as it relates to negligent supervision claims, "the supervision of employees is a ministerial act when it merely involves enforcing known policies." *Hedgepath v. Pelphrey*, 520 F. App'x 385, 392 (6th Cir. 2013) (citing *Yanero*, 65 S.W.3d at 529).

On this issue, the Sixth Circuit's decision in *Hedgepath* is instructive. In *Hedgepath*, the court applied the discretionary versus ministerial standard and held that supervisory jailers were not entitled to qualified immunity where the plaintiff asserted the jailers simply failed to enforce a known policy of checking on detainees in observation cells every twenty minutes. *Id.* at 391–92; *see also Lawrence v. Madison Cty.*, 695 F. App'x 930, 933–34 (6th Cir. 2017). Similarly,

---

[2] Notably, Plaintiffs do not contest that supervision and enforcement of jail policy was within the scope of the troopers' authority, nor do they attempt to provide facts demonstrating that either Defendant acted in bad faith.

5

here, Defendants Waits and Aldridge are not entitled to qualified immunity where Plaintiffs assert that Waits and Aldridge simply failed enforce a known rule—Jail Policy 6-100. The rule is straightforward: male staff simply were not to enter female housing unless requested and accompanied by female staff. Its enforcement plainly did not require any "exercise of discretion or judgment, or personal deliberation . . .." *Yanero*, 65 S.W.3d at 522.

In view of the relevant case law, it is clear that enforcement of Jail Policy 6-100 was a ministerial function. But before moving forward, the Court will briefly address Defendants' arguments on this issue. Both are well wide of the mark. First, Defendants argue that "it . . . cannot be disputed that the supervision and enforcement of policies are discretionary functions." [R. 145-2 at 7 (citing *Rowan Cty. v. Sloas*, 201 S.W.3d 469 (Ky. 2006), and *Jefferson Cty. Fiscal Court v. Peerce*, 132 S.W.3d 824 (Ky. 2004)).] This is simply a misstatement of the law and the cases Defendants cite in support either offer no support or directly contradict their position. *See Rowan Cty.*, 201 S.W.3d at 478 (citing *Yanero*, 65 S.W.3d at 529) ("[W]e have held that enforcement of a well known rule for safety is ministerial . . ..").

Second, Defendants argue that "[t]o the extent that the Plaintiffs argue that Defendant Waits negligently failed to enforce certain policies, that theory has already been found wanting by the Court." [R. 145-2 at 8.] That is far from an accurate representation of this Court's prior holding. The only holding as it related to Defendant Waits' alleged failure to enforce Jail Policy 6-100 concerned Plaintiffs' *§ 1983 claims*, where the Court held that Plaintiffs failed to introduce sufficient evidence of notice or constructive notice to Defendant Waits, as necessary to establish a custom under § 1983. [R. 140 at 17–19.] For purposes of the state law negligence claim, and the qualified immunity analysis more specifically, that holding is wholly immaterial. Setting

6

aside these failed arguments, the Court finds that enforcement of Jail Policy 6-100 was ministerial in nature and, therefore, qualified immunity is unavailable to Defendants Waits and Aldridge.

**2**

Lastly, the Court will address Defendants' arguments that Plaintiffs' negligence claims "fail on the merits." [R. 145-2 at 11.] To prevail on a claim of negligence, a plaintiff must prove "(1) a duty of care owed by the defendant, (2) conduct constituting a breach of that duty, (3) resultant injury and (4) causation between the breach and the injury." *Lewis v. B & R Corp.,* 56 S.W.3d 432, 436–37 (Ky. App. 2001). In the correctional setting, Kentucky law "imposes the duty on a jailer to exercise reasonable and ordinary care and diligence to prevent unlawful injury to a prisoner placed in his custody, but he cannot be charged with negligence in failing to prevent what he could not reasonably anticipate." *Rowan Cty.*, 201 S.W.3d at 478 (quoting *Lamb v. Clark*, 138 S.W.2d 350, 352 (Ky. 1940) (internal quotations omitted)). Ordinarily, the "duty of ordinary care to prevent [harm] arises only upon the discovery of some fact which would lead a reasonable person to believe there is some likelihood of . . . injury." *Id.* at 479 (citation omitted). "Kentucky courts look to the general foreseeability of harm, not to whether the particular, precise form of injury could be foreseen." *T & M Jewelry, Inc. v. Hicks*, 189 S.W.3d 526, 531 (Ky. 2006).

Defendants concede that they had a duty of ordinary care to prevent harm to Plaintiffs while incarcerated. [R. 145-2 at 12.] But they argue that Plaintiffs fail to establish two other necessary elements: breach and causation. *Id.* Plaintiffs disagree, arguing that there is a material factual dispute as to both elements such that summary judgment is improper. [R. 148 at 5–8.]

7

a

The Court agrees with Plaintiffs: there is sufficient evidence in the record to create a material issue of fact as to whether the harm was reasonably foreseeable to Defendants Waits and Aldridge. Thus, Defendants are not entitled to summary judgment on the element of duty of care or the closely related element of breach of duty of care.[3] As noted, the negligence standard under Kentucky law does not require actual knowledge of impending harm to establish duty of care; the touchstone is whether the harm was reasonably foreseeable. *T & M Jewelry*, 189 S.W.3d at 531; *Rowan Cty.*, 201 S.W.3d at 479. On this issue, the apparent purpose of Jail Policy 6-100 and its complete lack of enforcement are significant.

First, the rule's apparent purpose. It is undisputed that, generally, there is a potential for sexual abuse in the correctional setting. *See Rivera v. Bonner*, 952 F.3d 560, 566 (5th Cir. 2017) ("[O]fficers in detention facilities are often able to exercise almost complete control over detainees, which creates real risks that officers will sexually assault the people in their care."). To address this risk, authorities promulgate rules to create a safe environment and, further, train employees on how to avoid and spot sexual abuse.[4] *See, e.g., Cash v. Cty. of Erie*, 654 F.3d 324, 329 (2d Cir. 2011). This context established, based on the content of the present rule, it is clear that one of its primary purposes was to avoid the potential for any sexual harassment or abuse or even claims of sexual harassment or abuse. To this point, Defendant Foltmann acknowledged that, while he was unaware of the rule itself, when male deputies entered the female cell block he would monitor them on camera to protect both the deputy and the female inmates from "any

---

[3] Defendants concede they owed a "general duty of care" and debate whether they breached that duty by arguing the harm was not reasonably foreseeable. [R. 145-2.] But the foreseeability of harm inquiry mainly determines "whether a duty existed in a particular situation," not whether a breach of any duty occurred. *See T & M Jewelry*, 189 S.W.3d at 531. This clarification established, the Court recognizes that, necessarily, the foreseeability inquiry also informs any finding as to *breach* of that duty of care.

[4] In fact, that exact type of training took place at SCDC. [*See* R. 121-17 at 52.]

accusations." [R. 121-10 at 42.] Similarly, one of the SCDC employees accused of sexual assault, Defendant Patrick Votaw, acknowledged in his deposition that although he was also unaware of the rule itself, male deputies would try to avoid "lingering" on the "female side." [R. 121-8 at 48 ("Usually with male deputies on the female side, the quicker you can get in, the quicker you can get out.").] The fact that sexual abuse allegedly occurred after jail officials failed to enforce a policy largely aimed at preventing sexual abuse was, at the very least, reasonably foreseeable. *See Lawrence v. Madison Cty.*, 176 F. Supp. 3d 650, 681 (E.D. Ky. 2016), *aff'd sub nom.*, 695 F. App'x 930.

      Moreover, despite the risk attendant with non-enforcement, the record strongly indicates that Waits and Aldridge failed entirely to enforce the policy. Here, Plaintiffs do not claim that the Defendants failed to enforce the rule only on certain occasions but, instead, that Defendants *never* enforced the rule. As noted, the record supports this surprising assertion. Four deputies were asked in their depositions about the rule and only one, Aldridge, the supervisor, was even aware of its existence. [R. 121-8 at 48–49; R. 121-10 at 42; R. 121-11 at 40.] The others stated there was no such rule prohibiting male deputies' presence on the female cell block. [*See* R. 121-10 at 42 ("Question: Are there any rules about male deputies going into female cells; Answer: No."). Further, testimony from non-Plaintiff female inmates supports the assertion that this rule was neither enforced nor abided by. [*See, e.g.*, R. 121-12.] So, in sum, Plaintiffs allege that SCDC supervisors, Waits and Aldridge, failed to enforce the rule and, subsequently, the harm the rule sought to avoid—sexual abuse—allegedly befell the Plaintiffs. Such a result is both unfortunate and reasonably foreseeable. *See Lawrence v. Madison Cty.*, 176 F. Supp. 3d 650, 681 (E.D. Ky. 2016), *aff'd sub nom., Lawrence for Estate of Hoffman v. Madison Cty.*, 695

9

F. App'x 930 (6th Cir. 2017). Defendants are not entitled to summary judgment on these elements.

b

Even after showing that there is a genuine issue of material fact on the elements of duty of care and breach, Plaintiffs must still establish causation. Under Kentucky law, a plaintiff may show legal causation by demonstrating that the defendant's conduct was "a substantial factor in bringing about the harm." *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 92 (Ky. 2003). The term "substantial" is "used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense ... rather than in the so-called 'philosophic sense,' which includes every one of the great number of events without which any happening would not have occurred." *Id.* (citation omitted). The Court has a "duty to determine 'whether the evidence as to the facts makes an issue upon which the jury may reasonably differ as to whether the conduct of the defendant has been a substantial factor in causing the harm to the plaintiff.'" *Id.*

"Generally, the existence of legal cause is a question of fact for the jury." *Bailey v. N. Am. Refractories Co.*, 95 S.W.3d 868, 872 (Ky. Ct. App. 2001) (citing *Huffman v. S.S. Mary & Elizabeth Hospital*, 475 S.W.2d 631 (Ky. 1972)). And, while a plaintiff has the burden on this element, "it is well recognized that 'legal causation may be established by a quantum of circumstantial evidence from which a jury may reasonably infer that the product was a legal cause of the harm.'" *Bailey*, 95 S.W.3d at 872–73 (quoting *Holbrook v. Rose*, 458 S.W.2d 155, 157 (Ky. 1970)). Here, the jury "naturally draws inferences from circumstantial evidence" but "[t]hese inferences . . . must be reasonable, that is they must 'indicate the *probable*, as distinguished from a *possible* cause.'" *Bailey*, 95 S.W.3d at 872-73 (emphasis in original).

10

Plaintiffs argue that non-enforcement of Policy 6-100 was a substantial factor sufficient to establish causation.[5] They argue that, as a matter of logic, the "most probable outcome of strict enforcement of Policy 6-100 is that no male deputy, including [the deputies who allegedly committed the sexual assault] could have ever been inside [the female cell block] without female deputies." [R. 148 at 7.] And, taking the argument one step further, Plaintiffs assert that if those male deputies were accompanied by female deputies, "it is nearly impossible to imagine that they would have tried to abuse Plaintiffs or that women deputies would have permitted such abuse." *Id.*

The Court again agrees with Plaintiffs. Certainly, the most direct cause of Plaintiffs' alleged harm were the actions of the perpetrators of the sexual abuse. But it does not require any great inferential leap to conclude that the serial failure to enforce a rule aimed at preventing such behavior was also substantial factor in allowing the alleged sexual abuse. *See Bailey*, 95 S.W.3d at 872–73. To Plaintiffs' point, it seems "nearly impossible" that if the rule were followed such that female deputies accompanied male deputies while on the female cell block that the abuse would have occurred. At the very least, "reasonable minds could differ as to whether" non-enforcement of Policy 6-100 was a substantial factor in causing the harm to Plaintiffs that resulted from the alleged sexual assaults. *Hammons*, 113 S.W.3d at 92. Defendants are not entitled to summary judgment on the element of causation.

## III

Plaintiffs allege that Defendants Waits and Aldridge were negligent in failing to enforce a known rule and, because of this negligence, repeated sexual abuse occurred on their watch. The

---

[5] Defendants offer no developed argumentation on this point and simply state, in a conclusory manner, that "there is no evidence that said violation was a substantial factor in causing the sexual abuse of the Plaintiffs." [R. 145-2 at 12.]

11

Defendants are not entitled to qualified immunity on this issue and, on the record, neither are they entitled to a ruling that Plaintiffs' claims fail as a matter of law. Whether Defendants Waits and Aldridge can be held liable for negligence for failure to enforce Jail Policy 6-100 will be up to the jury to decide.

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

  1. Defendants' Supplemental Motion for Summary Judgment [**R. 145**] is **GRANTED in part** and **DENIED in part**;

  2. Plaintiffs' intentional infliction of emotional distress claims against each of the individual Shelby County Defendants, as set forth in Count VII of the Third Amended Complaint, are **DISMISSED**;

  3. Plaintiffs' negligence claims against Defendants Donovan and Foltmann, as set forth in Count VI of the Third Amended Complaint, are **DISMISSED**; and

  4. Plaintiffs' negligence claims against Defendants Waits and Aldridge, as set forth in Count VI of the Third Amended Complaint, remain.

This the 11th day of May, 2020.

Gregory F. Van Tatenhove
United States District Judge